```
UNITED STATES DISTRICT COURT                            USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                           DOCUMENT
------------------------------------------------------X ELECTRONICALLY FILED
                                                    :   DOC #:
JOHN PATERNO,                                       :   DATE FILED: 7/31/2018
                                                    :
                              Plaintiff,            :   17 Civ. 8278 (LGS)
                                                    :
              -against-                             :   OPINION AND ORDER
                                                    :
THE CITY OF NEW YORK, et al.,                       :
                                                    :
                              Defendants.           :
------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff John Paterno brings this action against the City of New York (the "City") and Polly Trottenberg, the Commissioner of the New York City Department of Transportation (the "DOT"), pursuant to 42 U.S.C. §1983. This case arises out of actions taken by DOT against Plaintiff in connection with allegations of racial discrimination directed at DOT and Plaintiff when he was an Executive Director of a subdivision of DOT. In the Amended Complaint (the "Complaint") Plaintiff asserts two causes of action. The first is based on a "stigma-plus" theory, alleging that Defendants violated Plaintiff's due process rights "[b]y transferring and demoting [him] in a manner that causes injury to his reputation, limiting his current and future earning opportunities, and denying him a venue to clear his name;" and the second cause of action alleges that Defendants violated Plaintiff's First Amendment rights by "taking disciplinary/retaliatory action against Mr. Paterno for talking to fellow employees . . . ." Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons below, the motion is granted.

I.  BACKGROUND

The following facts are drawn from the Complaint and documents attached to or integral to the Complaint, and are accepted as true for the purposes of this motion. *See Tannerite Sports, LLC v. NBC Universal News Grp.*, 864 F.3d 236, 247-48 (2d Cir. 2017).

A.  The Title VII Action

On January 18, 2017, the United States Attorney's Office for the Southern District of New York sued the City and the DOT for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, alleging a pattern and practice of racial discrimination and retaliation based on the failure to promote minority employees working at the DOT (the "Title VII Complaint"). The Title VII Complaint alleges that racial discrimination occurred in the Fleet Services subdivision of the Roadway Repair and Maintenance Division, and identifies two Executive Directors as the principal wrongdoers. Although the Title VII Complaint does not name either Executive Director, Plaintiff is easily identifiable as Executive Director II.

The Title VII Complaint accuses Plaintiff of promoting less-qualified Caucasian employees over their better-qualified minority counterparts, and giving Caucasian employees the most desirable jobs. The Title VII Complaint also accuses Plaintiff of reducing a subordinate's access to overtime payments, in order to punish him for complaining that a highly-qualified minority candidate was passed over for a promotion in favor of a less-qualified Caucasian employee. According to the Title VII Complaint, when a highly-qualified minority employee complained that he did not receive a promotion, Plaintiff yelled at the employee: "I'll take you outside and kick your fucking ass." The Title VII Complaint also states that Plaintiff lied to the DOT's Office of Equal Employment Opportunity ("EEO"), telling them that he never heard Executive Director I use racial epithets to refer to African American employees. On June 13, 2017, the City and DOT entered into a consent decree with the federal government, admitting to all allegations in the Title VII Complaint (the "Consent Decree").

Defendants never questioned Plaintiff about the critical allegations in the Title VII Complaint before the Consent Decree was signed and published. Plaintiff denies the allegations contained in the Title VII Complaint and Consent Decree. On June 16, 2016, before the filing of the Title VII Complaint, Plaintiff was transferred to a less-desirable position in the DOT, without any explanation or ability to appeal, and his pay was cut by approximately $60,000 per year (the "Demotion"). The basis for the Demotion was the allegations of discriminatory conduct that underpin the Title VII Complaint and Consent Decree.

### B. The Press Accounts

Subsequent to the execution of the Consent Decree, *The Chief*, a widely circulated public employee newspaper, published multiple articles criticizing Plaintiff. An article published on June 26, 2017, described the incident in which Plaintiff "verbally threatened . . . with a threat of physical violence a non-management employee who confronted him about his racist treatment of minority employees." In a letter to the editor printed on July 3, 2017, and referenced in a June 30, 2017, article, Defendant Trottenberg identified Plaintiff by name, and stated that the DOT had taken "aggressive action" to rectify the matters discussed in the Consent Decree. Defendant Trottenberg stated that the DOT "removed John Paterno, the main subject of the investigation, from his position, reassigning him to a position without supervisory responsibility and no role in hiring or promotions." According to the article, Plaintiff's "compensation dropped from $197,000 in 2015 to $163,000 last year." In an article printed on July 17, 2017, the Chairman of the City Council Committee on Civil Service and Labor, I. Daneek Miller, called for Plaintiff's firing. The Demotion, coupled with the allegations in the Consent Decree and negative publicity, destroyed Plaintiff's opportunities for advancement in the DOT and hurt his job prospects outside the DOT.

### C. The Flatlands Yard Incident

On approximately June 26, 2017, shortly after the first article about the Consent Decree appeared in *The Chief*, Plaintiff was served with a Notice of Complaint, which states that Plaintiff had been accused of "retaliation" by his former coworkers. The Notice of Complaint states, in relevant part:

> On June 19, 2017, the New York City Department of Transportation's Office of Equal Employment Opportunity received a complaint against you alleging unlawful retaliation and has opened an investigation in connection with the complaint. In sum, the allegation contained in the complaint is that you have contacted DOT employees in connection with their participation in the lawsuit *U.S.A. v. City of New York*. Specifically, it is alleged that you appeared at Flatlands Yard on June 16, 2017 and spoke to DOT employees regarding the consent decree executed in *U.S.A. v. City of New York*, including speaking with individuals who are identified as Claimants in that action.

On July 19, 2017, Plaintiff's attorney sent a letter to Defendant Trottenberg, in which Plaintiff denied all allegations of wrongdoing. On July 24, 2017, *The Chief* published an account of Plaintiff's attorney's letter. Then, on approximately September 15, 2017, Plaintiff received a further letter stating that the EEO had finished its investigation, and found that the claims of retaliation were substantiated. On January 30, 2018, Plaintiff received a Notice of Informal Conference, notifying him that the charges against him would be adjudicated by the DOT, Office of the Advocate.

The Notice of Informal Conference further informed Plaintiff that if he did not accept the Conference Leader's decision, he would have the option of proceeding with an alternative hearing pursuant to § 75 of the New York Civil Service Law. The informal conference was scheduled for February 14, 2018. The Notice of Informal Conference charged Plaintiff with (1) going to the Flatlands Yard facility on June 16, 2017, while on a leave of absence, and having no official business at the facility; (2) questioning subordinate minority employees at Flatlands Yard about their participation in the Consent Decree and whether they testified against him and (3)

4

describing to subordinate minority employees what their specific awards were under the Consent Decree.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015); *accord In re Neurotrope, Inc. Sec. Litig.*, No. 17 Civ. 3718, 2018 WL 2561024, at *3 (S.D.N.Y. June 4, 2018).

## III. DISCUSSION

In order to succeed on a claim under 42 U.S.C. § 1983, "a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (citations omitted); *accord Mosca v. City of New York*, No. 17 Civ. 4327, 2018 WL 2277837, at *3 (E.D.N.Y. May 18, 2018). For the reasons below, the Complaint fails to state a constitutional claim under § 1983.

### A. Fifth Amendment Due Process

The Complaint's Fifth Amendment claim is dismissed for failure to name a proper defendant. The Due Process Clause of the Fifth Amendment applies to only the Federal Government. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'") (internal citations omitted); *Garcia v. City of New York*, No. 15 Civ. 7470, 2017 WL 1169640, at *7 (S.D.N.Y. Mar. 28, 2017) ("[T]he Fifth Amendment only applies to claims against the federal government, and Plaintiffs have not named any federal defendants."). Here, the Complaint raises claims against only the City and the Commissioner of the DOT; it does not raise claims against any federal officials or entities. Accordingly, the Complaint fails to state a Fifth Amendment claim.

B. **Fourteenth Amendment Due Process**

The Complaint raises a "stigma-plus" theory of due process liability.[1] The "stigma-plus" claim is dismissed, because the Complaint does not identify a stigmatizing statement and Plaintiff received sufficient post-deprivation name clearing.

1. **"Stigma-Plus"**

"To establish a 'stigma-plus' claim, a plaintiff must show (1) [stigma --] the utterance of a statement sufficiently derogatory to injure [plaintiff's] reputation, that is capable of being proved false, and that he or she claims is false, and (2) [a plus --] a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010); *accord Dowd v. DeMarco*, No. 17 Civ. 8924, 2018 WL 2926619, at *7 (S.D.N.Y.

---

[1] To the extent that other theories for a Due Process Clause violation could have been raised based on the facts described in the Complaint, they are deemed waived for a failure to brief. *See, e.g., Lin v. Sessions*, 681 F. App'x 86, 88 (2d Cir. 2017) (summary order) ("Issues not sufficiently argued in the briefs are considered waived . . ."); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, No. 15 Civ. 7199, 2018 WL 3130596, at *2 n. 2 (S.D.N.Y. Jun. 26, 2018) (same).

June 12, 2018). Accordingly, "even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Vega*, 596 F.3d at 81; *accord McNaughton v. de Blasio*, No. 14 Civ. 221, 2015 WL 468890, at *14 (S.D.N.Y. Feb. 4, 2015). "Burdens that can satisfy the 'plus' prong under this doctrine include the deprivation of a plaintiff's property, and the termination of a plaintiff's government employment." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal citations omitted); *accord Filteau v. Prudenti*, 161 F. Supp. 3d 284, 294 (S.D.N.Y. 2016). "However, deleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38; *accord Autotech Collision Inc. v. The Inc. Vill. of Rockville Ctr.*, 673 F. App'x 71, 74 (2d Cir. 2016) (summary order).

In order to survive a motion to dismiss on a "stigma-plus" claim, the complaint must plead the particulars of a "statement sufficiently derogatory to injure" the plaintiff's reputation; not merely general characterizations or summaries of those statements. *Vega*, 596 F.3d at 81; *see, e.g.*, *Filteau*, 161 F. Supp. 3d at 293 (dismissing a "stigma-plus" complaint where the allegations of "stigma" were "conclusory and speculative"); *Miley v. Hous. Auth. of City of, Bridgeport*, 926 F. Supp. 2d 420, 432 (D. Conn. 2013) (dismissing a complaint where the "allegations are devoid of specific factual content to state a claim to relief for a stigma-plus violation that is plausible on its face").

In analyzing the "stigma" component of a "stigma-plus" claim, courts look to state substantive law of defamation. *See, e.g.*, *Sharpe v. City of New York*, No. 11 Civ. 5494, 2013 WL 2356063, at *6 n. 10 (E.D.N.Y. May 29, 2013), *aff'd*, 560 F. App'x 78 (2d Cir. 2014) ("federal courts in New York often look to New York defamation law when analyzing a "stigma-plus" claim."); *Boss v. Kelly*, No. 07 Civ. 2113, 2007 WL 2412261, at *6 (S.D.N.Y. Aug. 23, 2007) ("For purposes of [plaintiff's] section 1983 liberty interest claim, this Court looks to New

York's substantive state law regarding defamation."); *Pisani v. Westchester Cty. Health Care Corp.*, 424 F. Supp. 2d 710, 718 (S.D.N.Y. 2006) ("Establishing defamation in the § 1983 context is no different than under New York State law.").

For the "stigma" prong of the claim, the Complaint alleges that Defendants made "erroneous allegations of discriminatory conduct" about Plaintiff and refers specifically to the Consent Decree and Trottenberg's letter to *The Chief* as quoted in a July 30, 2017, article. The Consent Decree and the July 30 article are appended to the Complaint and are the only statements of Defendants' that the Complaint specifically identifies and challenges. These statements are insufficient to plead stigma.

First, the Consent Decree, which does not even mention Plaintiff by name, cannot constitute a stigmatizing statement, because it was made in the course of a legal proceeding. Under New York law, "statements uttered in the course of a judicial proceeding are absolutely privileged, as long as such statements are material and pertinent to the questions involved in the proceeding." *Stega v. New York Downtown Hosp.*, -- N.E.3d --, 2018 WL 3129383, at *4 (N.Y. June 27, 2018); *see also Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718–20 (2015) ("[I]t is well-settled that statements made in the course of litigation are entitled to absolute privilege . . . ."). Such privileged statements cannot form the basis for a "stigma-plus" claim. *See, e.g., Sharpe*, 2013 WL 2356063, at *7 (denying a "stigma-plus" claim based on statements that "fall squarely within the scope of the privilege that attaches to statements made in the course of judicial proceedings"). Here, the Consent Decree and the statements in it are absolutely privileged and cannot be the basis for a claim, because they are material and pertinent to the questions involved in the Title VII proceeding -- i.e., whether the DOT engaged in racial discrimination.

Plaintiff asserts that Defendant Trottenberg's statements to *The Chief*, as reflected in the June 30, 2017, article, are actionable because they "very publicly supported the characterization

of the Plaintiff in the Consent Decree as a vile racist . . . ." Defendant Trottenberg is quoted as making the following four statements in that article:

1. The nine-year period described in the Consent Decree "represent[s] a terrible chapter in this agency's history."

2. "[U]nder my leadership, racism and discriminatory behavior of any sort are not tolerated. This administration and this agency believe diversity, tolerance and equal opportunity are fundamental principles . . ."

3. The DOT took "aggressive" action to "dramatically" restructure senior leadership in 2015 and 2016, in order "to address the concerns raised by the complainants."

4. The "DOT removed John Paterno, the main subject of the investigation, from his position, reassigning him to a position without supervisory responsibility and no role in hiring or promotions."

The first two statements -- referencing "a terrible chapter" and "fundamental principles" -- are not actionable because they are opinions, which are not "capable of being proved false." *Vega*, 596 F.3d at 81; *see, e.g.*, *Sharpe*, 2013 WL 2356063, at *6 ("a statement of opinion, rather than fact . . . is not actionable as a stigmatizing remark."); *Wiese v. Kelley*, No. 08 Civ. 6348, 2009 WL 2902513, at *6 (S.D.N.Y. Sept. 10, 2009) ("The Attorney General's description of the conduct resulting in the loss of data as 'extremely troubling' is a statement of opinion, rather than fact, and as such is not actionable as a stigmatizing remark."); *cf. Apionishev v. Columbia Univ. in City of New York*, No. 09 Civ. 6471, 2012 WL 208998, at *10 (S.D.N.Y. Jan. 23, 2012) (dismissing a libel claim, because "[e]xpressions of opinion are not actionable"). The Complaint does not, and cannot, "raise the falsity of these stigmatizing statements as an issue," because, neither Defendant Trottenberg's description of the "terrible chapter" in the DOT's history, nor her affirmation of the DOT's belief in diversity as a fundamental principle is capable of being disproven. *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

The third and fourth statements by Defendant Trottenberg cannot establish "stigma," because the Complaint does not claim that they are false. *See Vega*, 596 F.3d at 81 ("To establish a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently

9

derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false . . . ."); *see also DiBlasio v. Novello*, 413 F. App'x 352, 356 (2d Cir. 2011) (summary order) ("Because the statement was not false, it cannot form the basis for a stigma plus claim, however stigmatizing it might appear to be.") (citations omitted). The Complaint acknowledges that both statements are true; it states that Plaintiff was demoted to a lesser position on June 16, 2016, and that "[t]he basis for this Demotion was the false allegations of discriminatory conduct that formed the basis for the Consent Decree . . ." Negative inferences that might be drawn from the factually accurate description of Plaintiff's reassignment are not sufficient. *See, e.g.*, *O'Connor v. Pierson*, 426 F.3d 187, 195 (2d Cir. 2005) ("Even if O'Connor is correct that townsfolk drew negative inferences from his suspension, this is not enough to make out a stigma-plus claim."); *Attallah v. New York Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 455 n.8 (E.D.N.Y. 2015) ("such statements would not satisfy the 'stigma plus' requirements because they are facially accurate; simply 'announc[ing]' the fact of plaintiff's expulsion, stigmatizing or not, cannot be shown or plausibly alleged to be false because plaintiff was indeed expelled."). As none of the statements Defendant Trottenberg provided to *The Chief* establish "stigma," the first cause of action is dismissed.

### 2.     Post-Deprivation Process

Even if the Complaint had properly pleaded a "stigma-plus" claim, it nevertheless requires dismissal because Plaintiff received an adequate post-deprivation remedy. The Second Circuit has held that in cases "involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 214 (2d Cir. 2006); *accord Schneider v. Chandler*, No. 16 Civ. 6560, 2018 WL 770395, at *7 (S.D.N.Y. Feb. 7, 2018). Under New York law, state employees may appeal adverse employment determinations made by their employers pursuant to an Article 78 proceeding in state court. *See* N.Y. CPLR 7801, *et seq*.

"An Article 78 proceeding provides the requisite post-deprivation process" for a "stigma-plus" claim. *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011) (citations omitted); *see also Patterson*, 370 F.3d at 335 ("The appropriate remedy for a stigma-plus claim premised on a plaintiff's termination from at-will government employment is a post-deprivation name-clearing hearing."); *accord Gallagher v. New York City Health & Hosps. Corp.*, No. 16 Civ. 4389, 2017 WL 4326042, at *3 n.1 (S.D.N.Y. Sept. 20, 2017).

Plaintiff's decision not to avail himself of the process he was due -- i.e., an Article 78 proceeding -- does not constitute a denial of due process. *See, e.g.*, *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity."); *Cole-Hatchard v. Hoehmann for Town of Clarkstown, New York*, No. 16 Civ. 5900, 2017 WL 4155409, at *7 (S.D.N.Y. Sept. 18, 2017) ("An Article 78 proceeding adequately serves as a post-deprivation name-clearing hearing. Plaintiff's failure to avail himself of this proceeding means he was not denied due process.").

Plaintiff argues that the availability of an Article 78 proceeding does not foreclose the present action, relying on cases that hold that post-deprivation remedies are insufficient where the due process violation "was pursuant to a statute, code, regulation, or custom, or made by a final decisionmaker," rather than "random acts." *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 152 n.3 (2d Cir. 2010) (internal citations and quotations omitted). Plaintiff argues that "[t]he City's entry into the Consent Decree was not a random act, but the implementation of City policy -- indeed the whole point behind entry into the Consent Decree was to alter City and DOT Policy. It could not be addressed by an Article 78 petition."

This argument fails because these exceptions to the sufficiency of post-deprivation Article 78 hearings do not apply to "stigma-plus" claims. Although "[d]octrine in this Circuit has oscillated between requiring post-deprivation and pre-deprivation hearings in stigma-plus

11

cases," *Spang v. Katonah-Lewisboro Union Free Sch. Dist.*, 626 F. Supp. 2d 389, 397 (S.D.N.Y. 2009), the Second Circuit acknowledged and resolved that ambiguity in *Segal*: "We now hold that, in this case involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim . . . ." 459 F.3d at 214; *accord Hughes v. City of New York*, 680 F. App'x 8, 10 (2d Cir. 2017) (summary order).

Because it is principally the "plaintiff's reputational interest . . . that is at issue" in a "stigma-plus" claim, "[t]he appropriate remedy for a stigma-plus claim . . . is a post-deprivation name-clearing hearing." *Patterson*, 370 F.3d at 336. The Second Circuit has repeatedly upheld the use of Article 78 "name-clearing" hearings for "stigma-plus" claims -- even when the facts appear to fit one of the exceptions. *See, e.g.*, *Anemone*, 629 F.3d at 121 (affirming the dismissal of a "stigma-plus" claim because a post-deprivation Article 78 hearing provided sufficient process to a plaintiff fired by the Executive Director of the MTA); *Hughes*, 680 F. App'x at 10 (dismissing a "stigma-plus" claim because of the availability of a post-deprivation Article 78 hearing where the DOE Chancellor had instructed that the plaintiff be removed). Any damage to Plaintiff's reputation was addressable in an Article 78 proceeding; damaged reputations are precisely the harm that a "name-clearing" hearing under Article 78 is designed to address. *Anemone*, 629 F.3d at 121; *see also Gallagher v. New York City Health & Hosps. Corp.*, No. 17 Civ. 2942, 2018 WL 2049114, at *2 (2d Cir. May 2, 2018) (summary order) ("Gallagher does not plead that she did not have the opportunity to clear her name in an Article 78 proceeding, and we have no other reason to believe that she would be denied this avenue."). Accordingly, the Complaint's due process claim is dismissed for this additional reason.

### C. First Amendment Retaliation

The Complaint alleges a second cause of action, that Defendants took "disciplinary/retaliatory action against [Plaintiff] for talking to fellow employees about matters

12

of public concern," specifically the issuance by the DOT of the Notice of Complaint recounting the receipt of a complaint about Plaintiff's alleged unlawful retaliation against DOT employees who were claimants in the Title VII Complaint. The claim is dismissed because the Complaint does not allege facts sufficient to show that Plaintiff's speech was protected by the First Amendment.

"[T]he First Amendment protection of a public employee's speech depends on a careful balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lane v. Franks*, 134 S. Ct. 2369, 2374 (2014) (citations omitted). "Where, as here, a plaintiff claims that he or she was retaliated against in violation of the First Amendment, he or she must plausibly allege that (1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Montero v. City of Yonkers, New York*, 890 F.3d 386, 394 (2d Cir. 2018) (citations omitted).

Here, the Complaint fails to state the first element of a prima facie First Amendment retaliation claim with respect to the EEO investigation that stemmed from Plaintiff's visit to Flatlands Yard.² "A court conducts a two-step inquiry to determine whether a public employee's speech is protected: The first requires determining whether the employee spoke as a citizen on a matter of public concern." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (citation omitted); *accord Kiernan v. Town of Southampton*, No. 17-212, 2018 WL 2251633, at *2 (2d Cir. May 17, 2018) (summary order). The first step contains two sub-questions: "(1)

---

² The Demotion cannot constitute an adverse employment action for the purpose of the Complaint's First Amendment retaliation claim, because Plaintiff was demoted almost a full year before his visit to Flatlands Yard. Accordingly, Plaintiff's speech at Flatlands Yard cannot have caused the Demotion.

13

whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Matthews*, 779 F.3d at 172. If the answer to either sub-question is no, then the employee was not speaking as a citizen on a matter of public concern, and their speech is not protected. *Id*. "If, however, both questions are answered in the affirmative, the court then proceeds to the second step of the inquiry, commonly referred to as the *Pickering* analysis: whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer." *Id*. Here, the speech identified in the Complaint fails at both steps of the First Amendment protection analysis.

### 1. "Public Concern"

"Whether speech is on a matter of public concern is a question of law, and is to be answered by the court after examining the content, form, and context of a given statement, as revealed by the whole record." *Montero*, 890 F.3d at 399. "While this determination may be somewhat fact-intensive, it presents a question of law for the court to resolve." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003); *accord Harris v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 230 F. Supp. 3d 88, 98 (E.D.N.Y. 2017). Accordingly, in order to state a plausible retaliation claim, a complaint must identify the content of the speech that is protected so that it is possible to engage in the required "fact-intensive" inquiry. *See, e.g.*, *Ortiz v. Russo*, No. 13 Civ. 5317, 2015 WL 1427247, at *11 (S.D.N.Y. Mar. 27, 2015) (dismissing a retaliation claim because "Plaintiff fails to specifically identify the speech or conduct at issue which he purports to be protected.").

The Complaint contains one paragraph about what Plaintiff discussed with his co-workers:

> All discussions Mr. Paterno had with coworkers about the Consent Decree, by its very nature, including denial of the City's "admissions" in the Complaint that touched his conduct, or asking other employees for their views, involved a matter of public importance, *i.e.*, discriminatory conduct at DOT, and his involvement in it.

The Notice of Informal Conference, which is attached to the Complaint, provides further detail. Plaintiff went to Flatlands Yard on June 16, 2017, while on a leave of absence, and having no official business at the facility; he questioned subordinate minority employees about their participation in the Consent Decree; he asked whether they had testified against him and discussed with two of them (who are named) the specific Consent Decree reward each had received. The Complaint also states that "[t]here was no allegation of any threatening or retaliatory action taken against any individuals in the Notice." However, this description of what Plaintiff did not say at Flatlands Yard does not elucidate what Plaintiff said.

These subjects that Plaintiff discussed with his co-workers are not matters of public concern. "To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community." *Montero*, 890 F.3d at 399. "[S]peech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation, or that is calculated to redress personal grievances -- even if touching on a matter of general importance -- does not qualify for First Amendment protection." *Id.* at 399-400. "[A] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Id.* at 400. "The heart of the matter is whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose." *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (internal quotation marks omitted); *accord Majied v. New York City Dep't of Educ.*, No. 16 Civ. 5731, 2018 WL 333519, at *4 (S.D.N.Y. Jan. 8, 2018).

Here, Plaintiff's discussions with his co-workers principally focused on his personal grievances -- not on matters of public concern. Plaintiff went to Flatlands Yard without any

15

official reason to be there, suggesting a personal motivation. Plaintiff asked subordinate minority employees whether they had testified against *him* with respect to the Title VII Complaint, and informed two of the employees that he knew how much money they had been awarded as a result of the Consent Decree. Any tangential discussion of broader "discriminatory conduct at DOT" unrelated to Plaintiff -- which the Complaint does not describe -- was secondary to discussion of Plaintiff's involvement. Accordingly, Plaintiff's speech was not protected, because he did not speak "as a citizen on a matter of public concern." *Matthews*, 779 F.3d at 172.

## 2. *Pickering* Analysis

Even if the speech identified in the Complaint were on a "matter of public concern," it nevertheless would not trigger First Amendment protection, because the City "had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer." *Matthews*, 779 F.3d at 172. "The problem in any case is to arrive at a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citations and alterations omitted). A government entity may avoid liability for First Amendment retaliation if it can: "(1) demonstrate by a preponderance of the evidence that it would have taken the same adverse action regardless of the protected speech, or (2) show that the plaintiff's expression was likely to disrupt the government's activities, and that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression." *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004); *accord Agyeman v. Roosevelt Union Free Sch. Dist.*, 254 F. Supp. 3d 524, 533 (E.D.N.Y. 2017).

Here, Plaintiff's speech was disruptive. Plaintiff went to Flatlands Yard without any official reason while on administrative leave. Plaintiff engaged minority subordinate employees in conversations about whether they testified against him, and how much money they received as

a result of the Consent Decree. That speech motivated the subordinate minority employees to file a complaint with the EEO. Plaintiff's speech, all of which occurred in the workplace, was more likely to cause an immediate disruption than speech that occurs outside of the workplace, which numerous courts have determined to be punishable under the *Pickering* balancing test. *See, e.g.*, *Lynch v. Ackley*, 811 F.3d 569, 580 (2d Cir. 2016) (finding that a public employee's criticism of a supervisor at a union meeting was likely to be disruptive); *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 619 (S.D.N.Y. 2015) (finding that a teacher could be punished for speech in an online chatroom, because it would have been disruptive "if his activities had become widely known while plaintiff was still employed as a teacher"). The City's interest in maintaining an orderly work environment at the DOT outweighs any First Amendment interest Plaintiff had. Accordingly, even if Plaintiff's speech was "on a matter of public concern," the EEO investigation was justified by the City's "needs as an employer," and the Complaint is dismissed. *Matthews*, 779 F.3d at 172.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED. The Clerk of Court is respectfully directed to close this motion at Docket No. 24, and to terminate the case.

Dated: July 31, 2018
New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE